IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRENDA FLORIO et al.** : | |
| Plaintiffs, : | |
| : | |
| v. : | Civ. No. 17-5518 |
| : | |
| **RYOBI TECHS., INC. et al.** : | |
| Defendants. : | |

**Diamond, J.**                                                                                               September 2, 2020

## MEMORANDUM

Plaintiff Brenda Florio injured her left hand while using an electric saw manufactured and sold by Defendants. In support of her defective design claim, she and her co-Plaintiff husband offer the opinions of Professor Gordon D. Moskowitz. The Parties agree that this case may not proceed unless I permit Dr. Moskowitz to testify as a design expert. Unfortunately, Moskowitz's professional experience has little to do with the issues in this case. His unreliable methodology reflects that lack of specialized knowledge. Accordingly, I will grant Defendants' Motion to bar his testimony, grant Defendants' Motion for Summary Judgment, and dismiss this case.

**I.   BACKGROUND**

I have construed the record and resolved all factual disputes in Plaintiffs' favor.

Ms. Florio attempted to saw a "workpiece"—a six-feet by one-foot pine board—in half, using a Ryobi CSB135L circular saw, which she had bought at Home Depot for $35. (See Moskowitz Dep. 79:21–23, Ex. A to Defs.' Mot. *in limine*, Doc. No. 45-1.) A circular saw is a handheld power tool used to cut lumber, plywood, and the like. Above the blade and motor, the Ryobi Saw has a large rear handle (containing the Saw's trigger switch), which the user grips with her right hand. The Saw also has a front handle, which the user grasps with her left hand to guide the saw along the cutting path. Before her accident, Plaintiff had used the Saw once without

incident. (Moskowitz Rep. 3, Ex. B to Pls.' Opp'n, Doc. No. 50-5.)

Florio's injuries likely resulted from a "kickback" that occurred after she had sawed four inches into the board. (See id. 5–7.) A kickback can occur when the divided halves of the workpiece converge around the saw blade, pinching the blade at its interior. (Id. 5.) Such narrowing of the "kerf" (the slit cut by a saw) can have many causes, including knots in the wood, improper saw setup, improper use, or a warped or dull blade. When the kerf collapses on the blade, the saw's forward movement is obstructed. Because the motor continues to apply an upward rotational force at the blade's lead edge where the teeth have caught, the saw blade suddenly releases with an equal force up from the wood and opposite the cutting direction. (Id.) This force apparently broke Florio's grip on the left handle, pulling her hand into the Saw's backward trajectory. The moving blade lacerated three of her fingers before the Saw fell to the ground. (See id. 15–16.)

On July 28, 2017, Ms. Florio and her husband, Thomas Florio, Jr., filed a Complaint against Ryobi Technologies, One World Technologies, and Techtronic Industries (the entities that design, manufacture, and distribute the Saw), and Home Depot (the Saw's seller), alleging: (1) strict products liability based on defective design and failure to warn; (2) negligence; (3) breach of express and implied warranties; and (4) loss of consortium. (Compl. ¶¶ 53–115.) The case was assigned to Judge Simandle, late of this Court. After Defendants moved to dismiss the negligence and breach of warranty claims, Judge Simandle dismissed those Counts on consent. (Doc. Nos. 7, 10, 17.) Plaintiffs then filed the instant Amended Complaint, alleging only products liability and loss of consortium. (Am. Compl. ¶¶ 53–90, Doc. No. 22.)

In August 2019, after the Parties completed discovery, Third Circuit Chief Judge Smith designated Judge Padova (of the Eastern District of Pennsylvania) to preside over this matter.

(Doc. No. 43); see 28 U.S.C. § 292(b).  On October 10, 2019, Defendants moved for summary judgment and to preclude Moskowitz's testimony.  (Doc. Nos. 44, 45.)  Chief Judge Smith then reassigned the case to me.  (Doc. No. 49.)  Plaintiffs, who are represented by counsel, opposed both Motions.  In their two-page response to Defendants' summary judgment Motion, Plaintiffs withdraw their warning claims, leaving only the defective design and derivative loss of consortium claims.  (Pls.' Opp'n to Defs.' Mot. Summ. J 2, Doc. No. 51.)  In their laconic opposition to summary judgment, Plaintiffs focus exclusively on Moskowitz.  (Id. 2 ("[I]t is respectfully submitted that should Moving Defendants' Motion to Bar Dr. Moskowitz be denied that Moving Defendants' Motion [for Summary Judgment] must be denied as to Plaintiffs' design claims because Moving Defendants entire basis is that Plaintiff's (*sic*) claims should be dismissed if Plaintiff does not have expert testimony to support the same.")  The Parties thus agree that summary judgment as to defective design turns on Defendants' expert testimony challenge.  (See id.; Defs.' Reply Br. 1.)

## II. LEGAL STANDARDS

I must serve as a "gatekeeper" and ensure that "any and all expert testimony or evidence is not only relevant, but is also reliable."  Kannankeril v. Terminix Int'l,128 F.3d 802, 806 (3d Cir. 1997).  Rule 702 thus provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts in the case.

Fed. R. Evid. 702.  The Third Circuit has held that the Rule requires a three-part analysis:

> *(1) qualifications*—whether the expert is qualified to speak with authority on the subject at issue; *(2) reliability*—whether the expert's methodology is sound and

3

>whether his or her opinion is supported by "good grounds;" and *(3) fit*—whether there is a relevant "connection between the scientific research or test result to be presented and particular disputed factual issues in the case."

Milanowicz v. Raymond Corp., 148 F. Supp. 2d 525, 530–31 (D.N.J. 2001) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741–43 (3d Cir. 1994) (Paoli II). "Plaintiffs must establish by a preponderance of the evidence that an expert is qualified and that the expert's testimony is admissible." Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 372 (D.N.J. 1995); see Paoli II, 35 F.3d at 744 ("This does not mean that plaintiffs have to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.").

Rule 702 demands a "flexible" inquiry. Daubert v. Merrell Dow Pharms., Inc. 509 U.S. 579, 594 (1993). Because the "overarching subject is the scientific validity and thus the evidentiary relevance and reliability," I must focus on the proposed expert's "principles and methodology, not on the conclusions they generate." Id. at 594–95. "The 'ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results.'" Paoli II, 35 F.3d at 744 (quoting DeLuca v. Merrell Dow Pharms., Inc., 911 F.2d 941, 956 (3d Cir. 1990) (alteration in original)). Although expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it," I must apply apply Rule 702's requirements in accordance with the Federal Rules' "liberal thrust," erring on the side of admission. Daubert, 509 U.S. at 595, 588 (quoting Weinstein, Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended, 138 F.3d 631, 632 (1991)); see Paoli II, 35 F.3d at 739.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first show the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is material only if it could affect the suit's result under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). I "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). The opposing party must support each essential element with concrete evidence in the record. See Celotex, 477 U.S. at 322–23. I may grant summary judgment if I then determine that there is no genuine issue of material fact. See id. at 322.

## III. DISCUSSION

Plaintiffs concede that to survive summary judgment, they must produce supporting expert evidence of the Saw's defective design, as "the subject matter 'falls outside of the common knowledge of the factfinder and depends on scientific, technical, or other specialized knowledge.'" Mykolaitis v. Home Depot U.S.A., Inc., Civ. No. 13-1868, 2016 WL 590213, at *3 (D.N.J. Feb. 11, 2016) (quoting Jerista v. Murray, 883 A.2d 350, 364 (N.J. 2005)); Diluizio-Gulino v. Daimler Chrysler Corp., 897 A.2d 438, 441 (N.J. Super. Ct. 2006); (see Pls.' Opp'n to Defs.' Mot. Summ. J.) Accordingly, I will begin by addressing Defendants' threshold *Daubert* challenge to Dr. Moskowitz. See Dymnioski v. Crown Equip. Corp., Civ. No. 11-3696, 2013 WL 2297035, at *2 (D.N.J. May 24, 2013) (in a design defect case the defendant's "motion for summary judgment [wa]s contingent upon the exclusion of" plaintiff's proposed expert testimony).

### A. The Proposed Expert Testimony

Plaintiffs retained Dr. Moskowitz to evaluate Ms. Florio's "incident and the design of the

5

subject Ryobi saw." (Pls.' Opp'n 3.)  Moskowitz received a PhD in Mechanical Engineering from Princeton University in 1964.  (Moskowitz CV, Ex. C to Pls.' Opp'n.)  He started as a Professor in Drexel University's Mechanical Engineering and Mechanics Department in 1977, and assumed *emeritus* status in 1998.  At Drexel, Moskowitz developed an Engineering Design course, and taught courses bearing on human interaction with tools.  (Id.)  Professor Moskowitz has published numerous academic papers, most recently in the 1990s and 1980s on "bipedal locomotion" and lower-extremity electromyography.  (Id.)  He has never written about circular saws or power saws.  (Moskowitz Dep. 18:10–15.)  In the 1980s and earlier, Moskowitz presented at technical conferences, mostly on issues relating to prosthetics, but addressed other topics, such as evaluating head trauma.  (Id.)  He does not recall ever attending a conference at which power saw design or safety was discussed.  (Id. 19:16–22.)  In the 1970s, he once assisted a manufacturer of pneumatically operated power saws with "noise reduction."  (Id. 16:13–23.)  Otherwise, he has no experience in power saw standard setting or design, and has never set foot in a plant where such tools are made.  (Id. 18:16–19:15.)  Moskowitz's power saw experience is limited to testifying in lawsuits.  He acknowledged that this is the "first case [he has] been involved in [concerning] a circular saw."  (Id. 39:1–3.)

Dr. Moskowitz has provided expert trial or deposition testimony on twenty occasions over the past twenty-seven years.  (Pls.' July 31, 2020 Letter 2, Doc. No. 57.)  Although Moskowitz represents in his Report that he has served as an expert in cases concerning "portable hand saw[s], miter saw[s,] and table saw[s]," counsel identifies just one case in which:  Moskowitz opined on the design of a miter saw, more than twenty years ago.  (Id.); see Mamatuck v. Black & Decker, Civ. No. 96-6807 (E.D. Pa.).  His expert witness work has otherwise involved patent infringement, slip-and-fall personal injuries, and equipment-related injuries.  (Ex. A to Defs.' July 31, 2020

Letter, Doc. No. 56.)

Professor Moskowitz prepared a Report concerning all aspects of the instant case, reconstructing Ms. Florio's accident and opining that Defendants should have: incorporated certain safety features, drafted a less "cluttered" and better "illustrated" Operator's Manual, and included an instructional CD with the Saw. (Moskowitz Rep. 29.) He describes Plaintiff's accident, providing an "injury sequence." (See id. 15–16.) He concludes that Ms. Florio experienced a kickback, as I have described. He then briefly discusses nine possible design alternatives to remedy what he views as a defective product:

> (1) blade braking; (2) blade clutch; (3) tissue-saw blade contact detection; (4) faster lower blade guard closure; (5) double handle switches; (6) riving knife; (7) riving ring; (8) spring loaded riving rings; and (9) riving ring with outrigger.

(Id. 18–19.) He did not purport to test any of these alternatives, calculate the cost of incorporating them, or assess their effects on the Saw's functioning. Indeed, he never even operated the Saw.

### B.  The Proposed Testimony Is Not Admissible

Dr. Moskowitz fails to meet any of the Third Circuit's expert criteria: qualifications, reliability, and fit. Although any one failure is fatal, I will, in an abundance of caution, address all three.

#### 1.  *Moskowitz Has No Expertise in Circular Saw Design*

To qualify as an expert, Dr. Moskowitz must have "specialized knowledge" concerning the subject he will address. Ortiz v. Yale Materials Handling Corp., Civ. No. 03-3657, 2005 WL 2044923, at *3 (D.N.J. Aug. 24, 2005). The foundation for his "specialized knowledge 'can be practical experience as well as academic training and credentials.'" Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000) (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998)). Although the Third Circuit has thus "interpreted the specialized knowledge requirement liberally,"

7

the proffered expert nonetheless "must possess skill or knowledge greater than the average layman." Id. (quoting Waldorf, 142 F.3d at 625).  Moreover, the qualification question is "fact-intensive": the expert's credentials and experience must be relevant to the subject of proffered testimony.  Poust v. Huntleigh Healthcare, 998 F. Supp. 478, 491 (D.N.J. 1998).

Although there are many kinds of saws, this case calls for expertise in the design of only one kind: circular saws.  Professor Moskowitz does not have "specialized knowledge" respecting circular saw design.  His academic training and professional experience have nothing to do with the questions Plaintiffs ask him to address: whether the Saw was defective because it could have been designed, without compromising its effectiveness or unreasonably increasing its cost, with certain safety features; and whether those "defects" caused Ms. Florio's injuries.  These are not abstract, academic questions, and instead require an intimate familiarity with the product and relevant safety standards that Moskowitz lacks.

In his deposition testimony, Moskowitz himself well revealed the gap between this case's central questions and his expertise.  For instance, when pressed on one of his recommended safety features—the addition of a riving knife (a table saw device intended to prevent a cut board's separated parts from closing)—he testified that he believed a manufacturer called "Lestool has a circular saw with a riving knife." (Moskowitz Dep. 77:12–14.)  There is no saw manufacturer named "Lestool."  Moskowitz apparently meant "Festool," which sells, among other power tools, circular saws, including a model that has some sort of riving device. (Id. 78:1–6.)  He thought, but was "not certain," that Festool has a circular saw with a riving ring. (Id. 77:22–25.)  Yet, Moskowitz testified that he has never seen—much less used—a Festool saw. (Id. 78:9–18.) Rather, he learned about the product by "look[ing] online at various equipment places that [he] deal[s] with." (Id. 79:9–10.)

8

Similarly, Moskowitz testified that he believed that Bosch sells a circular saw with one of his recommended security enhancements in the United States.  (Id. 77:12–14.)  He recanted when pressed by counsel.  (Id. 78:20–79:7.)  Moskowitz acknowledged that one of his proposed safety enhancements—flesh detection—is available on table saws, yet has never been used in circular saws.  Moskowitz apparently made no effort to determine why this was so, or why other safety features common to table saws are unavailable or rarely used for circular saws.  (Id. 104:9–105:20 ("Q.  Why at the time this saw was purchased by Mrs. Florio at Home Depot did table saws have riving knives, but circular saws sold in the United States did not have riving knives?  A.  For the life of me, I don't know.  Q.  Did you make any effort to find out?  A.  No.").)  Rather, he "opined," with no supporting evidence, that "[p]olitics" is the reason why no manufacturer has adopted his proposals.  (Id. 114:10–14.)

This slack familiarity with circular saw features is compounded by the Professor's ignorance of the safety standards governing these tools.  Once again, Moskowitz has published no papers relevant to the topics in this case, has never worked or consulted for power saw manufacturers, and holds no power saw patents.  Moskowitz testified that he has never been involved in setting safety standards for power saws.  (Id. 39:14–16.)  He has never communicated with standards-setting organizations or saw manufacturers, not even contacting any to determine why his suggested designs have never been adopted.  (Id. 20:5–21:9, 104:14–17.)  Insofar as he familiarized himself with relevant standards, it was only in preparing to testify in this lawsuit.  (See id. 76:17–20.)

Even under Rule 702's forgiving standard, Moskowitz is unqualified to testify as a product design expert.  The Professor seeks to opine here on subjects well outside his wheelhouse, and apparently has made little effort to become conversant in the relevant literature before preparing

9

his Report.  (See, e.g., id. 119:8–14.)  His casual literature review—like his incurious approach to learning relevant safety standards—does not compensate for Moskowitz's lack of experience.  See Diaz, 893 F. Supp. at 372 (physician barred from testifying on medical issue outside his expertise even after he reviewed one relevant article); (see also Pls.' Opp'n 16 (acknowledging that Moskowitz consulted few resources, including two "relevant" standards and "a research paper").)

### 2. *Moskowitz's Methods Are Not Reliable*

I must consider several factors in evaluating whether the expert's methodology is reliable:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Kannankeril, 128 F.3d at 806 n.6 (quoting Paoli II, 35 F.3d at 742 n.8).  This reliability framework governs both technical and scientific expertise.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 151 (1999).  Yet, the Supreme Court has admonished that reliability factors (like those enumerated above) may not apply with equal force in every setting.  See id. (*Daubert*'s reliability "factors do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged.").  Courts in this District have thus relied on related considerations in design defect cases:

> (1) federal design and performance standards, (2) standards established by independent standards organizations, (3) relevant literature, (4) evidence of industry practice, (5) product design and accident history, (6) illustrative charts and diagrams, (7) data from scientific testing, (8) the feasibility of any suggested modification, and (9) the risk-utility of any suggested modification.

Ebenhoech v. Koppers Indus. Inc., 239 F. Supp. 2d 455, 467 (D.N.J. 2002) (citing Milanowicz, 148 F. Supp. 2d at 536).  Although all these factors may be helpful, I have "broad latitude to

10

determine" whether they are "reasonable measures of reliability" and will thus discuss only those useful here. Kumho Tire, 526 U.S. at 153. Dr. Moskowitz's lack of qualifications also weighs against my finding his methods reliable. See Diaz, 893 F. Supp. at 373.

### *Moskowitz's "Methodology" Is Untested*

The Professor conducted no testing to inform his criticism of the Saw's design or to substantiate his design proposals. This methodological shortcoming alone is fatal for his designation as an expert. See Oddi v. Ford Motor Co., 234 F.3d 136, 156 (3d Cir. 2000) ("The Supreme Court has explicitly instructed, '[o]rdinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested.'") (quoting Daubert, 509 U.S. at 595) (alteration in original)); Paoli II, 35 F.3d at 764 (upholding district court's exclusion of expert who offered "only a hypothesis which he had yet to attempt to verify or disprove by subjecting it to the rigors of scientific testing"). To support his design proposals (a list of safety features that either reduce the risk of kickback or mitigate the risk of injury during a kickback event), Moskowitz provided a brief narrative description of each. For instance, he wrote that "[i]ntroduction of a clutch between the motor shaft and the blade shaft that slips at a limiting torque setting can result in elimination of a kickback event." (Moskowitz Rep. 19.) He identified a patent that discloses such a mechanism, which Moskowitz believes "can be used on a circular saw," although he offers no examples of such use. (Id.) This conclusory discussion is illustrative of Moskowitz's "methodology": unsubstantiated theories as to how Defendants could have created a safer product. Plaintiffs thus seek to present "expert" design testimony from someone who has never implemented his own recommended features or even operated the supposedly defective product. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal

11

Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); see Lara v. Delta Int'l Mach. Corp., 174 F. Supp. 3d 719, 737 (E.D.N.Y. 2016) ("Without properly testing his alternative theory, [the proposed expert's] ultimate conclusions are 'bottomed upon nothing more than mere speculation and guesswork,' which are a less than adequate basis to support [the expert's] position—especially since performing detailed studies and tests represents the 'touchstone of what an engineering expert in a design defect case should do.'" (quoting Barban v. Rheem Textile Sys., Civ. No. 01-8475, 2005 WL 387660, at *6 (E.D.N.Y. Feb. 11, 2005), aff'd, 147 F. App'x 222 (2d Cir. 2005)).

Moskowitz "never attempted to recreate" Ms. Florio's accident, did not "produce an example of" his alternatives, or "do any practical research into how [his alternatives] could be incorporated into" the Saw. Booth v. Black & Decker, 166 F. Supp. 2d 215, 219, 221 (E.D. Pa. 2001). Moskowitz "essentially offered no methodology at all for his design defect theory." Id.; see also Oddi, 234 F.3d at 158 (upholding district court's exclusion of expert who "conducted no tests" and "used little, if any, methodology beyond his own intuition"). His decision not even to operate the Ryobi Saw—let alone test his alternative designs—is further mystifying because Moskowitz acknowledged during his deposition that Ms. Florio had not properly set up the board to be cut. (Moskowitz Dep. 69:14–23 ("Q. In your opinion, had Mrs. Florio adequately supported the piece of wood she was cutting at the time of the accident? A. I don't believe no.").)

Worse still, Moskowitz admitted that some of his alternatives are beyond *untested*: they are *untestable* because they are merely "conceptual designs." (Id. 112:23–25.) Moskowitz acknowledged that the authors of the Seiden study—the only source he cites in the section of his Report discussing his riving device proposals—did not create a circular saw using the variations Moskowitz now urges. (See id. 112:10–113:2.) Moskowitz's preposterous recommendation of

12

designs that exist only in the imagination of two academics belies any notion that his Report is indeed the product of any objective methodology.  See Barban, 2005 WL 387660, at *6–7; see also Cavanaugh v. Skil Corp., 751 A.2d 518, 521 (N.J. 2000) ("[B]oth the New Jersey statute and the *Restatement (Third)* require that the alternative design be feasible, not merely theoretically possible.").

### *Moskowitz's Alternatives Have Not Withstood Risk-Utility Analysis*

The Professor did not submit his suggested alternatives to any "risk-utility analysis," nor did he determine whether any was feasible.  See Diluzio-Gulino, 897 A.2d at 441 ("A plaintiff asserting a design defect in a products liability action 'must prove under a risk-utility analysis the existence of an alternate design that is both practical and feasible,' and 'safer' than that used by the manufacturer.") (quoting Lewis v. Am. Cyanamid Co., 715 A.2d 967, 980 (N.J. 1998)); see also Lara, 174 F. Supp. 3d at 736 ("In a products liability action, 'the touchstone of an expert's report should be a comparison of the utility and cost of the product's design and alternative designs.") (quoting Hilaire v. DeWalt Indus. Tool Co., 54 F. Supp. 3d 223, 233 (E.D.N.Y. 2016)).  Moskowitz never analyzed how his alternatives would affect the "usefulness and desirability" of the Saw, and only conclusorily stated—without any supporting calculation or evidence—that his suggested safety features could be incorporated without unreasonably increasing the Saw's cost.  See Smith v. Keller Ladder Co., 645 A.2d 1269, 1270–1271 (N.J. Super. Ct. 1994).  Because most of Moskowitz's alternative designs are not available, or do not actually exist, testing and rigorous analysis is especially necessary.  See Hilaire, 54 F. Supp. 3d at 244 (excluding expert testimony that omitted "comparisons and testing"); see also Milanowicz, 148 F. Supp. 2d at 533 ("[T]he absence of industry practice—or the expert's failure to include such evidence—may undermine the proposed alternative.").

13

The feasibility of Moskowitz's alternatives is doubtful. For instance, he acknowledged that only one manufacturer offers a circular saw with a riving knife at a price of $500—well over 10 times the cost of the Ryobi Saw. See id. at 536 (noting that without, *inter alia*, a relative cost-analysis of the alternative design, "courts are hard-pressed to find reliable an expert's conclusions regarding the defectiveness of the product and the appropriateness of the proposed alternative design"); (Moskowitz Dep. 80:5–20.) Moskowitz's testimony thus refutes Plaintiffs' suggestion that a riving knife comprises simply an inexpensive piece of metal and some screws. (See Pls.' Opp'n 17.)

### *Safety Standards and Industry Practices*

The Professor's Report and proposed testimony contradict applicable governmental and industry standards. See Ebenhoech, 239 F. Supp. 2d at 467. Although Moskowitz cites Occupational Safety and Health Administration and Consumer Product Safety Commission standards, "he fails to link his conclusions to those standards." Id. This is unsurprising because, as he acknowledged during his deposition, no standards-setting organization has ever required any of Moskowitz's suggested circular saw safety enhancements. (See Moskowitz Dep. 77:6–8 (OSHA has never required Moskowitz's alternatives); id. 77:2–5 (CPSC has never required Moskowitz's alternatives); id. 109:6–10 (identifying no state that has required any of Moskowitz's alternative designs).) To the contrary, the Ryobi Saw complied with applicable safety standards. (See id. 149:6–8 (the Saw complied with circular saw standards issued by Underwriter Laboratories, American National Standards Institute, and Canadian Standards Institute)); cf. Redman v. John D. Brush & Co., 111 F.3d 1174, 1178 (4th Cir. 1997) ("When deciding whether a product's design meets those standards, a court should consider whether the product fails to satisfy applicable industry standards, applicable government standards, or reasonable consumer

expectations.").

### *Moskowitz's "Methodology" Is for Litigation-Purposes Only*

Moskowitz has never applied his methodology to a "non-judicial" purpose, further undermining the reliability of his proposed expert testimony. Kannankeril, 128 F.3d at 806 n.6; Reiff v. Convergent Techs., 957 F. Supp. 573, 584 n.16 (D.N.J. 1997). As I have discussed, the Professor's sole experience respecting circular saw safety is his engagement in this lawsuit. This "weighs against [the] admissibility" of his Report and proposed testimony. DeLuca by DeLuca v. Merrell Dow Pharms., 791 F. Supp. 1042, 1057 (D.N.J.).

* * *

Plaintiffs' responses to these criticisms serve only to underscore their validity. Plaintiffs concede that Moskowitz never tested his proposed alternative designs, relying instead on inapplicable safety-standards, various incident data (which have no bearing on risk-utility), and a 1995 "conceptual" study. (Pls.' Opp'n 16.) Plaintiffs identify no decisions endorsing such a half-baked analysis.

In sum, there are no "good grounds" for Dr. Moskowitz's methodology, which I am compelled to find is unreliable.

### 3. Dr. Moskowitz's Proposed Testimony Does Not "Fit"

Under Rule 702, the proposed expert testimony "must assist the trier of fact." Paoli II, 35 F.3d at 742–43; see id. at 743 ("[A]dmissibility depends in part on 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'") (quoting United States v. Downing, 753 F.2d 1224, 1237 (3d Cir. 1985)). Once again, Plaintiffs offer Dr. Moskowitz's expert opinions to show that the Ryobi Saw was not suited or safe "for its intended purpose because it . . . was designed in a defective manner." Smith, 645

15

A.2d at 1270 (quoting Products Liability Act, N.J.S.A. 2A:58C-2(c)).  As there is no "connection" between Moskowitz's analysis and design safety, his testimony would not aid the jury and so fails Rule 702's "fit" requirement.

Once again, Moskowitz's proposals are entirely abstract. Nothing in his Report shows that Defendants could reasonably have incorporated his proposals or that Moskowitz even tried to create them.  Moreover, none is required by the organizations that regulate design and fabrication of circular saws.  Plaintiffs do not meaningfully explain how Moskowitz's opinions would assist the jury, arguing only that "the testimony and opinions of a mechanical engineering expert in a product liability case clearly meet the *Daubert* fit requirement."  (Pls.' Opp'n 18.)  This bald assertion misapprehends the standard and could not be further from the truth here, where a mechanical engineer seeks to offer little more than abstraction and untested suggestions.  In these circumstances, Dr. Moskowitz's testimony would be "unhelpful" for Rule 702 purposes.  See Paoli II, 35 F.3d at 743 ("[T]he requirement of reliability, or 'good grounds,' extends to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case.").

### C. Defendants Are Entitled to Summary Judgment

I will bar Dr. Moskowitz's proposed testimony, which flunks all three Rule 702 elements. The Parties agree that without expert testimony, Plaintiffs cannot prevail.  "Inasmuch as [Plaintiffs'] 'defect expert' does not survive *Daubert* scrutiny," Defendants are entitled to summary judgment on Plaintiffs' defective design claim.  Oddi, 234 F.3d at 159; see Milanowicz, 148 F. Supp. 2d at 541–42 (dismissing design defect claim at summary judgment because plaintiffs' expert did not satisfy Rule 702).

I must also enter judgment for Defendants on Plaintiffs' loss of consortium claim, which

is "derivative" of Plaintiffs' ability to recover for products liability.  McKinnon v. Gonzales, Civ. No. 07-1694, 2008 WL 305590, at *1 (D.N.J. Jan. 30, 2008).

## IV.     CONCLUSION

I well understand that the Rules of Evidence favor the admission of expert testimony.  See, e.g., Kannankeril, 128 F.3d at 806.  Although Professor Moskowitz is competent to opine as an expert on many subjects, circular saw design is not one of them.  He has virtually no relevant experience; never operated the Ryobi Saw; tested none of his proposed alternatives—not one of which is used on circular saws sold in the United States; and did not even attempt to estimate the cost of utilizing those untested alternatives.  Even under the liberal Federal Rules admission standard, his proposed "expert" testimony is little more than inadmissible wool gathering.  I will thus grant both Defendants' Motions and enter summary judgment in their favor.

An appropriate Judgment follows.

*/s/ Paul S. Diamond*
_____
September 2, 2020                                                            Paul S. Diamond, J.